CHAMBERLIN AND CURRIER *v.* D. L. FULLER, ASSIGNEE OF HOSEA WELCH, 2D.

*Replevin. Demand. Insolvent. Fraud. Evidence. Bankruptcy.*

1. DEMAND. MESSENGER. In an action of replevin against the assignee of an insolvent debtor to recover goods claimed to have been obtained by the debtor through fraud, a demand made upon the messenger or keeper under him, who had possession of the goods awaiting the appointment of an assignee, as bearing on the question of rescission of the contract, is sufficient.

2. RESCISSION. LAW AND FACT. JURY. PRACTICE. Whether one acts with reasonable promptitude in rescinding a contract induced by fraud, is a mixed question of law and fact, proper for the jury.

3. AGENT, DECLARATIONS OF. TRIAL, CONDUCT OF. The court in its discretion can admit the declarations of an agent before the agency is shown; and the question of agency does not arise, when the evidence tended to prove it, and there was no request, and no exception to the neglect of the court, to submit it to the jury.

4. FRAUDULENT CONSPIRACY. EVIDENCE. The question was whether the debtor entered into a conspiracy with his sureties to get possession of the goods without paying for them. The evidence tended to show the conspiracy. He had money but bought on credit; Held, that evidence was admissible to prove (a) how he could have purchased for cash; (b) that the plaintiffs told their salesman, in the absence of the debtor, to sell him goods not exceeding $500 in value; (c) the acts and declarations of the other conspirators while the common design was being carried out, and in furtherance of it; (d) that the conspiracy extended to the fraudulent purchase of goods of other parties; and (e) that the debtor's brother, five or six years before the failure, consulted an attorney as to his financial condition.

5. ORDER OF EVIDENCE. DISCRETION. It is in the discretion of the trial court to admit evidence in rebuttal that should have been introduced in the opening, if the opposing party is not thereby injured.

6. The defendant made the plaintiffs' witness his own by asking him on cross-examination if his attention had been called by any one to the debtor's condition,—a matter he had not testified to. It was not error to allow the plaintiffs on re-examination to inquire the name of the person.

7. For the purpose of showing that the debtor's stock of goods was not unreasonably large, evidence was not admissible to prove the stocks of other merchants in the same village.

8. AGENT. RATIFICATION. It is immaterial whether the debtor's son was his agent in giving instructions to the scrivener as to what property should be put into the mortgage deed, as he ratified his acts by signing it, knowing its contents.

9. RESCISSION. PARTIES PLACED IN STATU QUO. The plaintiffs, upon the recission, were under no obligation to reimburse the insolvent for money paid for freight of the goods.

10. FRAUDULENT REPRESENTATIONS. CHARGE. There was no error in the charge by which the jury were instructed, that if the insolvent represented that the mortgage on his property was all " fixed up," which was confessedly false, and the plaintiffs, in reliance upon the truth of the statement, would not have made the sale without it, then they had the right to rescind. Nor was there error in charging the jury that the insolvent could have remained silent; but when he undertook to tell, he should tell them fairly and fully.

11. REQUEST. PRACTICE. EXCEPTION. Where no exception is allowed, the question will not be considered, whether there was error or not in refusing a request to charge made out of time.

REPLEVIN for certain ready-made clothing. Plea, geneal issue. Trial by jury, December Term, 1885, Caledonia County, Ross, J., presiding. Verdict and judgment for the plaintiffs.

The plaintiffs' evidence tended to show that Hosea Welch, 2d, was a merchant, keeping a country store in November, 1881, and for many years prior thereto; that in the fall of 1881 his cousin Hosea Welch, Jr., one Almon L. Clark and Henry C. Glover were holden as sureties for him for several thousand dollars; that he was then owing large sums, and Glover learned that he was in such a financial condition that he, Glover, became alarmed, went to Hosea, 2d, and learned from him that he was owing some $8,000 or $10,000, and perhaps more; that Glover went to Clark, and together, after an interview between Hosea, 2d, and Clark, Clark and Glover consulted a lawyer as to the best course to be taken, and learned that a mortgage would not be good in insolvency, unless kept alive, without a failure, for four months; that finally in October, 1882, Hosea, 2d, went to Boston, and there purchased goods at various places amounting to about $2,300 or $2,400; that on November 2, 1882, Clark and Hosea, Jr., who had taken a real and personal mortgage in November, 1881, took possession of all the goods in the store and other personal property under the personal mortgage and an assignment of Welch, 2d; that soon after, creditors filed a petition in insolvency against him, upon which he was duly adjudged an insolvent; that the creditors elected defendant assignee of Welch, 2d, and on December 12, 1882, a deed of assignment was sent to defendant.

The plaintiffs' testimony tended further to show that the two Welches met in Boston in October, 1882; that Hosea, Jr., went with Hosea, 2d, to the various places where goods were purchased, made suggestions as to kind and quantity, and seemed to take an active part and interest in said purchases; and that among other purchases were the goods in dispute.

The plaintiffs claimed that the Welches and Clark entered into a conspiracy to get the goods into the hands of Hosea Welch, 2d, so that Clark and Hosea, Jr., might take possession of them under said chattel mortgage. The plaintiffs claimed to recover back the goods upon two grounds; first, that Hosea Welch, 2d, at the time of the purchase, did not intend to pay

for them ; second, that he made such fraudulent representations that no title passed. The defendant's evidence tended to show the contrary ; that the mortgages were given with the honest expectation that they would enable Hosea, 2d, to go along with his business, and pay his bills in full, as he always had done during a business of forty years or more ; that the goods were purchased in good faith, without misrepresentation or fraud, on the full disclosure of said mortgages, and with an honest purpose and intent to pay for the same ; and that the presence of Hosea, Jr., in Boston at the time was accidental, and without concert or plan.

*Bates & May*, *T. R. Gordon*, and *J. P. Lamson*, for the defendant.

The jury should have been asked to say whether the representations would have been likely to deceive a man of common prudence, and not whether it deceived Currier. *Gregory* v. *Schoenell*, 55 Ind. 101 ; Cooley Torts, 487 ; *Gunnison* v. *Bancroft*, 11 Vt. 491 ; *Pasley* v. *Freeman*, 3 Term, 54 ; 33 Me. 17 ; 33 Am. Dec. 710, *n.*

It was necessary to prove that they were made to influence the plaintiffs' conduct. *Byard* v. *Holmes*, 34 N. J. 296 ; *Tryon* v. *Whitmarsh*, 1 Met. 1 ; *Commins* v. *Coe*, 117 Mass. 45 ; 1 Benj. Sales, ss. 637, 694 ; *Phillip* v. *Gallant*, 62 N. Y. 256. And to deceive. 4 Scam. 170 ; 38 Ill. 260 ; 2 Wend. 385.

The charge omitted entirely the element of knowledge on the part of Hosea Welch, 2d. Moak Und. pp. 530, 551 ; *Com.* v. *Eastman*, 1 Cush. 89 : *Terrill* v. *Bennett*, 18 Ga. 404 ; 26 Ga. 366 ; 10 Iowa, 423 ; 1 Ind. 176 ; 41 N. H. 95.

The plaintiffs should have returned the money paid for freight, and placed the defendants *in statu quo*. Bishop Con. s. 203 ; *Voorhees* v. *East*, 2 Hill, 293 ; Chitty Con. p. 680 ; *Fitzsimmons* v. *Joslin*, 21 Vt. 129.

*Ide & Stafford* and *S. C. Shurtleff*, for the plaintiffs.

It was competent for Bridgman to testify as to the declara-

tions of Hosea, Jr., made to him on the morning of the sale of the goods in controversy. *State* v. *Thibeau*, 30 Vt. 105; *Jenne* v. *Joslin*, 41 Vt. 484; Roscoe Cr. Ev. 415 *et seq.*; 2 Starke Ev. 235; Rob. Dig. pp. 23, 24.

" A defrauded seller does not lose the right to rescind because the buyer has incurred expenses with respect to the property in carrying out the fraud, nor is it necessary that the seller should make good such expenses, even though he receives an advantage from them by recission." Benj. Sales (4th Am. ed.) s. 649, note; *Guckenhymer* v. *Angeline*, 81 N. Y. 394.

The demand was sufficient. R. L. s. 1820; *Tripp* v. *Leland*, 42 Vt. 487; *Sprague* v. *Clark*, 41 Vt. 6.

The charge of the court was correct. 5 Wait Act. and Def. 452; *Watson* v. *Atwood*, 25 Conn. 319; *Yale* v. *Seeley*, 15 Vt. 221; *Sawyer* v. *Phaley*, 33 Vt. 69; *Bank* v. *Evarts*, 45 Vt. 293; *Dow* v. *School Dist.* 46 Vt. 108; *Samson* v. *Warner*, 48 Vt. 247.

The opinion of the court was delivered by

TAFT, J.   I. We do not understand that the question of demand made upon trial was whether one was necessary to enable the plaintiffs to maintain the action except as bearing upon, and a part of, the question of a rescission of the contract; and the real question presented by the exceptions is, whether evidence of a demand of the goods made upon the messenger or the keeper under him was sufficient. We hold that it was. The goods were in possession of the messenger of the Court of Insolvency awaiting the appointment of an assignee. The insolvent had no power over them, and could not surrender them if demanded of him. Except as against the plaintiffs, the messenger was the only person who had any right to the control or custody of the goods. We think a demand made of him or the keeper under him was a proper one. While the messenger held the goods we think he was the only person against whom an action of replevin could have been maintained; and

if an action would lie against him we think a demand of him would be sufficient. In *Bussing* v. *Rice*, 2 Cush. 48, the action was replevin for goods fraudulently obtained by the insolvent, brought directly against the messenger, and the action was maintained without a demand.

II. Was the contract seasonably rescinded? When a party has been defrauded in the sale of goods, and desires to rescind the contract, he must do so as soon as he discovers the fraud, and is entitled to a reasonable time in which to do it. *Tilton Safe Co.* v. *Tisdale*, 48 Vt. 83. The request to charge upon this point was that the plaintiffs could not rescind at the time they undertook to do so upon conceded facts of the case. This was asking the court to treat the question as one of law. We do not find in the exceptions any facts stated which would justify the court in so doing. If the goods were obtained by fraud under the form of a contract the plaintiffs had a right to rescind. Whether they acted with reasonable promptitude as soon as they discovered the fraud, was a mixed question of law and fact proper to submit to the jury. It was submitted, and no exception taken to the charge as given. We have no occasion therefore to examine the charge on that point.

III. The defendant objected to the testimony of Bridgman as to the declarations of Welch, Jr., until it was shown that the latter was the agent of Welch, 2d. There was no error in this if there was testimony in the case tending to establish the agency, although the latter was given after the testimony of the declarations. The order in which evidence is introduced is within the discretion of the court. The testimony of both the Welches tended to show that Welch, 2d, sent Welch, Jr., to the plaintiffs to obtain the goods in question upon the credit of the former. This testimony tended to establish the agency and made the evidence of the declarations admissible, and the latter therefore was legitimately in the case. The defendant now claims that the question should have been submitted to the jury for them to find upon the evidence whether such an agency existed. No request was made to have the question

submitted; no exception taken to the neglect to submit it. The question therefore does not arise upon the charge.

IV. Was it error to show that Welch, 2d, could have bought goods for cash at seven per cent discount? He knew that goods could be bought for cash at a discount. He had money. He bought his goods on credit and took his money home. We think this testimony admissible in support of the plaintiffs' claim that there was a conspiracy to buy the goods on credit, get them into the possession of Welch's sureties, not pay for them, and thus defraud the plaintiffs. Welch, 2d, was so connected with the transaction of the purchase of the goods that we do not think it was error to show the terms upon which he might have purchased them for cash.

V. The witness Bridgman was the plaintiffs' salesman. Welch, 2d, applied for credit, and the plaintiffs, after an examination of Welch in reference to his financial standing, told Bridgman to sell him goods not exceeding five hundred dollars in value. We can see no error in admitting the evidence of that fact. It was a part of the same transaction. The objection made to the testimony was that Bridgman was told this not in the hearing of Welch, 2d. The latter must have known the result of his application for credit, for Bridgman at once sold him on credit goods substantially to the amount named, viz., $486.50. No more direct way of imparting this information to Welch, 2d, could have been adopted.

VI. The evidence tended to show a conspiracy claimed by the plaintiffs. The acts and declarations of one conspirator while the common design was being carried out and in furtherance of it, were legitimate evidence against the others. Under this rule the testimony as to the acts and declarations of Welch, Jr., at the time of the purchase of the goods in question, and the testimony of Darling as to the instructions he received from Welch, Jr., and Clark not to record the mortgage, were legitimate.

VII. That the conspiracy extended to the fraudulent purchase of goods of other parties than the plaintiffs was proper to

be shown under the rule laid down in *Eastman* v. *Premo*, 49 Vt. 355, and the evidence of Porter and Bullard was admissible for that purpose.

VIII. The inquiry of Welch, 2d, as to his brother having consulted an attorney about the financial condition of the former was not error. The defendant's counsel state in their brief that "it tended to show knowledge on the part of Hosea, 2d, of insolvency, etc., or at least render it more probable." We think for this very reason it was admissible, as the question of his knowledge of his own insolvency was quite material to the issues on trial. His solvency would render the conspiracy much less probable, in fact useless. How far back in time a party should be permitted to go in the proof of such facts was a question within the discretion of the trial court. Upon the facts shown in this case we cannot say it was error. Having been in trade for forty years, his financial condition five or six years before the failure might have quite a bearing upon his standing at the time of the alleged conspiracy.

IX. The objection to the evidence in relation to the phosphates and the interlineations in the bill of sale, was that the evidence was offered in rebuttal, and that it was not in rebuttal of any of the defendant's testimony, and therefore out of time.

This, if true, was not error, its admission being within the discretion of the County Court. It does not appear that the defendant was in any way injured by its admission at that time instead of in the opening, or denied the privilege of afterwards offering any evidence that he had upon the same subject.

X. Glover, a witness introduced by the plaintiffs, was asked on cross-examination if his attention had been called to the condition of Welch, 2d, by any one. He said it had. He had not been examined on this point by the plaintiffs, and he was thus made the defendant's witness upon that question. It was not error for the court, on re-examination, to permit the plaintiffs to ask him the name of the person.

XI. The plaintiffs claimed that the stock of clothing carried by Welch, 2d, in the fall of 1882, was a large one, unreason-

ably so, and that it bore on the issue of fraud. The defendant insisted that it was reasonable in amount for the place, and that he could show that fact by a comparison of the amount, with the stocks of other merchants in the same village. This was a collateral fact, and would at once start the inquiry whether the other merchants were not carrying unreasonable amounts. This was not a legitimate way of proving it. *Camp* v. *Averill*, 54 Vt. 320 ; *Weeks* v. *Lyndon*, ibid, 638.

XII. The testimony of Darling that E. M. Welch gave him some instructions as to what should be put into the mortgage deed was objected to and admitted under exception. It is said that he was a sort of an interloper, "nobody's agent." He was in his father's service at the time, helping him, and gave the scrivener instructions as to what property should be put into the mortgage deed. The deed was prepared, and his father executed it. Whether he was his father's agent or not at the time he gave the instructions is apparently of little moment. His acts were ratified by his father when he signed the deed, knowing its contents. That E. M. Welch gave the instructions was wholly immaterial. They were of no force until the deed was executed. The fact, if of any potency, was in favor of the defendant, showing that it was neither of the conspirators who gave directions in regard to what should be included in the mortgage deed.

XIII. Clark, one of the sureties, testified that during the year prior to the failure, both before and after the giving of the mortgages to the sureties, he did not suspect the insolvency of Welch, 2d. The testimony of Glover as to the interview at Dunnett's office tended to show that he did know of it during that time, and therefore to impeach him. It was admitted for that purpose, and properly.

XIV. The defendant claims that the plaintiffs, upon the rescission of the contract, were under an obligation to reimburse the insolvent for the money which he paid as freight on the goods to Groton. Such is not the law. They were under no obligation to the insolvent or his assignee, who stands in his

shoes, in respect to the goods. They were obtained by fraud; the law avoids every such sale, and disables the guilty party from setting up the contract or deriving any advantage from the fruits of it. It vitiates every act, however fair in appearance, and though clothed with the forms of law. The exceptions upon this question both as to the rulings upon evidence and the charge were not well taken.

XV. As to the exclusion of the testimony of Harry Blodgett. The defendant was entitled to all the conversation; and we think the exceptions show that the witness did testify to all that the defendant's counsel offered to show by him.

XVI. Did the court err in its charge as to what constituted false or fraudulent representations? The jury were told that if Welch, 2d, represented to the plaintiffs that his property had been mortgaged, but that it was all fixed up (the latter fact being confessedly false), that if they found that the plaintiffs relied upon the truth of the statement, would not have made the sale without it, then it was such a fraudulent representation as would give them the right to rescind the sale. What element is wanting in this statement of what would constitute fraud? A false statement of a material fact, known by the party to be false, and relied upon by the other party. The defendant insists that the false representations must have been such as to deceive a man of ordinary care and prudence; i. e., if a man is not endowed with those faculties he is at the mercy of every swindler who makes him his prey, excluding from the benefits of the law the very class around whom its arm should be thrown,—thus protecting the strong and robbing the weak. As well adopt Rob Roy's rule:

> " That they should take who have the power,
> And they should keep who can."

No rogue should enjoy his ill-gotten plunder for the simple reason that his victim is by chance a fool.

XVII. The defendant insists that the charge upon the subject of the intent not to pay for the goods was erroneous. The request was that if Welch, 2d, had any intent not to pay for

the goods at any other time than when he was purchasing them, then the plaintiffs cannot claim to rescind on that ground. The request was made out of time and the exception not allowed. We do not consider it.

XVIII. Defendant's claim that the charge as given in reference to what Hosea, 2d, was bound to tell the plaintiffs, was erroneous. The charge embodied sound and correct law. The jury were told that Welch, 2d, had the right to remain silent and say nothing, but that if he undertook to tell them " he should tell them fairly, fully, and frankly, so that they can determine whether they will trust him or not." It is a fraud for a man to tell part of the truth in regard to what he is inquired " of, and keep back another part which he knows, if disclosed, would prevent the party's dealing with him, and tell him something else to draw off his attention and prevent further inquiry."

This disposes of all the questions presented by the brief for the defendant.

Judgment affirmed.