## STEVENS *et al.* v. REILLY.

No. 6036.   Opinion Filed February 8, 1916.
On Petition for Rehearing March 21, 1916.

(156 Pac. 157.)

1.  **FRAUD—Action for Damages—Defense.** No man should be permitted to complain, or take advantage of the fact, that another has too confidently relied on the truthfulness of the statements he has himself made.

2.  **SAME—Negligence and Credulity of Party Defrauded.** Where fraud and deceit is practiced by a real estate broker, for the purpose of throwing a purchaser off his guard, and inducing him to make a purchase of land at a price largely in excess of that asked by the owner, with the usual commissions for the sale added, without making further inquiry as to the price for which the land could have been bought from the owner, and but for such false statements and fraudulent practices of the broker he would have

made further inquiries, it does not lie in the mouth of the broker to say that by giving credit to his false and fraudulent statements the purchaser must be held to have been cheated and defrauded as the result of his own negligence and credulity.

3.    **SAME.**  When it appears that one has been guilty of intentional and deliberate false statements, by which to his knowledge another has been misled and influenced in his action, he cannot escape the legal consequences of his fraudulent conduct by saying that the fraud might have been discovered had the party whom he deceived exercised ordinary care and diligence.

4.    **SAME — Amount of Recovery — Misrepresentations of Broker.**  Where a purchaser of property from a broker was induced to pay more than the owner asked for the property, by the fraudulent representation of the broker that the owner would not accept less than the price paid, and the confidential relations between the broker and purchaser were such that he believed the broker's statements and relied thereon to the extent that he failed to make further inquiry as to the price at which the land could be bought from the owner, the purchaser is entitled, in an action for deceit, to recover from the broker the excess, which he pocketed, less the usual commission for making the sale.

(Syllabus by Robberts, C.)

*Error from District Court, Kay County;*
*Wm. M. Bowles, Judge.*

Action by John F. Reilly against S. H. Stevens and another, copartners as the Stevens-Milam Real Estate Company.  Judgment for plaintiff, and defendants bring error.  Affirmed, and rehearing denied.

*J. F. King,* for plaintiffs in error.

*Wm. S. Cline* and *C. L. Pinkham,* for defendant in error.

Opinion by ROBBERTS, C.  The verdict of the jury in this case, so far as it relates to the facts, which will not be disturbed here, is to the effect that S. H. Stevens and G. L. Milam, as partners, engaged in the real estate business (they will herein be designated as agents), had listed for sale a tract of land belonging to O. A. Johnson,

at the minimum price of $8,300, and that they falsely and fraudulently represented to John F. Reilly, the defendant in error, who was a prospective buyer, and who will herein-after be designated as purchaser, that they had said tract listed with them, as the agents of Johnson, at the minimum price of $9,600, and had no authority to, and that they could not, and the owner would not, sell the property for a less price; and said purchaser being acquainted with said agents, having prior thereto purchased another farm near the one involved, through them as agents, believed said statements to be true, and fully relying thereon, was induced thereby to purchase said land at the price of $9,600, less $100, which the agents represented would be deducted from their commissions, the agents keeping the difference betwen the owner's price and the selling price; and that, after the sale was made to the purchaser, the agents, as a part of the scheme to cheat and defraud the purchaser, and for the purpose of claiming that they were the owners of the land, and as such owners had made the sale directly to the purchaser, entered into a written contract with Johnson, pretending to purchase the land out-right from him, but said contract was not made in good faith, but was a subterfuge and makeshift, entered into for the sole purpose of deceiving, cheating, and defrauding the purchaser. We say these are the facts in this case as found by the jury, under the following instructions:

"(5) You are instructed, gentlemen of the jury, that if you believe, from the preponderance of the evidence, that the defendants in this action were real estate agents, as claimed by the plaintiff, and that as such real estate agents they sold the plaintiff the farm of Owen A. Johnson, as agents, and at the time and prior to the purchase thereof the defendants represented to the plaintiff that

they had the property listed with them as the agents of O. A. Johnson, at the minimum price of $9,600, and that they had no authority and could not sell the property for a less price, and you further believe from the preponderance of the evidence that such representations on the part of the defendants were believed by the plaintiff to be true, and that he, relying upon said statements by the defendants, was induced to purchase said land at the listed price of $9,600, less $100, which was to be deducted out of the defendants' commission, and that such statements on the part of the defendants were false and untrue. And you further believe from the preponderance of the evidence that the contract of sale entered into by and between O. A. Johnson and the defendants herein was not entered into in good faith by O. A. Johnson, or the defendants, but was a makeshift and a subterfuge on the part of the defendants, and entered into for the purpose of deceiving and defrauding this plaintiff, your verdict should be for the plaintiff and against the defendants for such sum or sums as you believe will reasonably and fairly compensate the plaintiff for the damages sustained, measured by the rule the court will hereinafter give you in these instructions."

The action was brought by the purchaser against the agents to recover the sum of $1,200 as damages for fraud and deceit, less the usual and customary commissions for the sale of said land, which is alleged to be 5 per cent. on the first $1,000, and 2½ per cent. on all sums above that. Verdict was returned in favor of plaintiff for $785, which was approved by the trial court, and judgment entered accordingly. After motion for new trial was overruled, defendants bring error.

The question now presented is: Was there a misapplication of the law to the facts as found by the jury? Counsel for plaintiffs in error contends that the demurrer to the plaintiff's petition should have been sustained on the

ground that it contains no allegation that the agents "used any artifice, ruse, falsehood, or fraud to prevent the purchaser from finding out for himself, from the owner, what he would take for the land," and, also, that there is no evidence tending to prove such facts, and therefore neither the verdict of the jury nor the judgment of the court is sustained by sufficient evidence. The allegations of the petition, in this particular, are perhaps not as definite and certain as they might have been, but taking into consideration all the facts and circumstances as alleged and proved, we are of the opinion that the allegations of the petition, as well as the evidence, are sufficient to support the judgment. The petition charges, in substance, and the evidence clearly shows, that the agents were partners engaged in the real estate business; that they had prior to this transaction sold the purchaser another tract of land near the one in controversy; that they had the land listed with them as the agents of Johnson to be sold at $8,500, for which they were to receive from Johnson a commission of $200; that they priced the land to the purchaser at $9,600, and falsely and fraudulently, and for the purpose of cheating him, told him that they had the land listed with them for sale at $9,600, and that said land could not be bought for less money, except that they would throw off $100 of their commission; and that by reason of these false and fraudulent statements and misrepresentations, and because of his acquaintance and former transactions with these agents, and by reason of his reliance on them, he was induced to buy the land at $9,500. The evidence is more in detail, and clearly lays down the purring artifice and trickery of these agents, by their social drink in the back room of their office, the friendly game of cards, and

the not uncommon offer of some of the parties interested, or handy hangers-on, to buy the land in case the purchaser became dissatisfied, and the usual refusal to do so when the time came. In support of his contention counsel for plaintiff in error cites 20 Cyc. 49, wherein it is said:

"According to the weight of authority, however, the rule of *caveat emptor* applies, and under ordinary circumstances the purchaser is required to use reasonable prudence to avoid deception. Thus, where the subject-matter of the representation is a fact, not pecu'iarly within the vendor's knowledge, but is one as to which the purchaser has equal and available means and opportunity for information, and there are no confidential relations existing between the two, and no fraud or artifice is used to prevent inquiry or investigation, it is a general rule that the purchaser must make use of his means of knowledge, and that, failing to do so, he cannot recover on the ground that he was misled by the vendor."

One answer to that is, there was some evidence of confidential relations—the former acquaintance and business deals, the drive into the country, the friendly drink and game, the offer to throw off $100 of their commission, the pretended personal contract of sale entered into by the agents, with the statement that it was their usual way of doing business, and the friendly offer to take it off his hands. Under these conditions the purchaser relied on the statement of the agents of a present positive fact that the land could not be bought for less than $9,600, and to our mind he had a right to rely on that statement. We cannot recall any rule which compels men in their dealings with acquaintances, or even strangers, to act upon the presumption that all men are grafters and liars, nor any law which declares them guilty of negligence, and refuses them redress, whenever they fail to act on that presumption. The

"blue sky grafter" should not escape liability by setting up the plea that his victim should not have believed his statements.

As stated by the Supreme Court of Vermont, in *Chamberlain v. Fuller*, 59 Vt. 247, 9 Atl. 832:

"No rogue should enjoy his ill-gotten plunder for the s'mple reason that his victim is by chance a fool."

And as said in *Hale v. Philbrick*, 42 Iowa, 81:

"We are not inclined to encourage falsehood and dishonesty, by protecting one who is guilty of such fraud, on the ground that his victim had faith in his word, and for that reason did not pursue inquiries that would have disclosed the falsehoods."

The rule laid down in *Warder v. Whitish*, 77 Wis. 430, 46 N. W. 540, is:

"A person cannot procure a contract in his favor by fraud, and then bar a defense to a suit on it, on the ground that had not the other party been so ignorant or negligent he could not have succeeded in deceiving him."

A much more wholesome rule is, that no man should be permitted to complain, or take advantage of the fact, that another has too confidently relied on the truthfulness of the statements he has himself made.

In *Graham v. Thompson*, 55 Ark. 299, 18 S. W. 58, 29 Am. St. Rep. 40, the court says:

"The very representations relied upon may have caused the party to desist from inquiry, and neglect his means of information, and it does not rest with him who made them to say that their falsity might have been ascerta'ned, and it was wrong to credit them."

No doubt the purchaser in this case, confidently relying on the statements of the brokers, felt the absolute futility of making further inquiry.

The practice pursued by the agents in this case should be condemned. There is no reason, and certainly no justice, in permitting land agents or any other class of persons to obtain another man's money by such deceit and false representations.

To our mind the courts have gone the full limit where they have approved the acts of real estate agents in appropriating to their own use all they receive for' another's land, over and above the price agreed upon by the owner, where there is no artifice, trickery, or falsehood used to induce the purchaser to pay the agent a large sum of money over and above the owner's price and a fair and reasonable commission. It certainly has the appearance of taking another man's money without a fair or just compensation.

The rule applicable here is laid down by the Kentucky Court of Appeals in *Kice v. Porter*, 53 S. W. 285, as follows:

"Where plaintiff purchased property from defendant, a broker, for $7,000. upon his representation that the owner would not sell it for less than that price. when the fact was that the owner had consented to sell it for $6.500 and the broker's commissions, plaintiff can recover in an action of deceit only $500 less a reasonable commission to defendant."

In the body of the opinion the court says:

"The first is as follows: '(1) The court instructs the jury that, if they shall believe from the evidence that the defendant sold the house and lot mentioned in the plead-

ings to the plaintiff as the agent either of the plaintiff, the purchaser, or of Kellar, the owner, the law is for the plaintiff, and they should find for her in the sum of $500, with interest from the 1st day of April, 1895.' It will be observed that in her petition appellee rested her cause of action on the ground that appellant, as her employed agent, and in violation of his duty to her, had practiced a fraud on her, and by this fraud obtained for himself $500 of her money. It is insisted that under this allegation she cannot recover if he was not her agent. There is no proof that he was her agent, and it is urged that, if he was Kellar's agent only, there was no privity between them, and no recovery can be had. There is great force in this contention, but, taking the pleadings as a whole, we think the allegation that Kice was employed by her, and practiced the fraud as her agent, might be discarded, and there would still be enough left to warrant a recovery; for if, while Kellar's agent, Kice represented to appellee that the property could only be bought for $7,000, when he knew the price was $6,500, and by this falsehood obtained $500 for himself, he should not be allowed to retain the fruits of his fraud. But it is very evident that, even in this state of the case, he would be entitled to his commission out of the surplus, for appellee contemplated that Kellar was to pay him out of the amount she paid for the property. The proof shows that the reasonable commission in a case like this is two per cent. to five per cent. If he was Kellar's agent, he was entitled to his commission. Kellar, by his proposition, was to have $6,500 net, over and above commissions, and appellant should only be answerable, if at all, to the extent of the surplus of $7,000 over and above the $6,500 and his reasonable commission, because this is what Kellar, under the proof, really sold the property for. The court should not have made appellant responsible absolutely in case he acted as Kellar's agent, but only for deceit, and to the extent she was thus made to pay above the amount for which Kellar sold the property."

After being reversed on the grounds above indicated, the case was again decided by the same court (61 S. W. 266), and therein we find the following language:

"Where the purchaser of property from a broker was induced to pay more than the owner asked for the property by the fraudulent representation of the broker that the owner would not accept less than the price paid, the purchaser is entitled, in an action for deceit, to recover of the broker the excess, which he pocketed, less the usual commission for making the sale."

In the last case the judgment was for $337.50, being the amount of the judgment in the former trial, less the commissions. Counsel for plaintiffs in error contend that the doctrine in the Kice Case was overruled in *Ripy v. Cronan*, 131 Ky. 631, 115 S. W. 791, 21 L. R. A. (N. S.) 305, wherein it is said:

"A real estate broker cannot be held liable for representing to an intending purchaser that the owner would not accept less than the sum named by the broker for the premises, although the owner had in fact agreed with him to sell at a lower figure, in the absence of any confidential relation between the broker and intending purchaser or fraud to prevent inquiry or investigation by such purchaser."

In that case, Cronan, a real estate broker, sold to the board of education of the city of Louisville a schoolhouse site in that city, and, in so doing, told the board that the owner would not take less than the price named, while at the same time he had a written statement of the owner agreeing to take a much less sum. There was no pretense of former or present relations, or even acquaintance, between the members of the school board and the broker, and the court bases its opinion squarely on that ground—

because of "the absence of any confidential relations be-
tween the broker and intending purchaser, or fraud to
prevent inquiry or investigation by the purchaser." In
the instant case the evidence presents such friendly and
confidential relations between the broker and purchaser
as fully justified him in believing and relying on the
statement of the agents that the land could not be bought
for less money. They wanted him to rely on their state-
ments—they told him if he was not satisfied they would
take the land off his hands. They pampered him and pet-
ted him to obtain his confidence, and they should not now
be permitted to say he had no right to yield to their pre-
tended friendship and blandishments. As we view it, this
case is clearly distinguished from the Cronan Case, *supra,*
and comes within the rule laid down in the Kice Cases,
*supra,* which have not been overruled.

Another cogent answer to the contention of counsel
for plaintiffs in error is, that the judgment is in accord-
ance with the law as laid down in the instruction above
set out, and no exceptions were saved to that instruction,
and therefore it becomes, and is, the law of this case, and
the verdict of the jury and the judgment of the court are
in accordance therewith.

The next contention of plaintiffs in error is, that the
court erred in admitting evidence tending to prove that
the purchaser bought the land from Johnson through his
agents, Milam and Stevens, on the ground that such evi-
dence contradicted the terms of the written contract of
sale from Johnson to them. A sufficient answer to that is,
that the evidence was not introduced for the purpose of
contradicting the terms of the contract, but to prove that
it was grounded in fraud, and therefore void, on the

theory that fraud vitiates all contracts. The contention of the purchaser is, that this is not his contract, for the reason that his signature thereto was obtained by fraud, and by means of false and fraudulent representations made by the agents for the express purpose of inducing him to enter into the contract, and that both of said contracts were obtained by the agents as a part of the general scheme to cheat and defraud the purchaser, and at the same time protect the agents in their plans to deliberately deceive and defraud him. Taking that view of the case we are of the opinion that the court did not err in admitting that evidence. It bore directly upon one of the issues of fact submitted to the jury by the court.

Under the instructions above set out, evidenced by the verdict, the jury must have found as a fact that the contract between Johnson and the agents was entered into as a makeshift and subterfuge for the double purpose of cheating and defrauding the purchaser, and to protect the agents in their schemes to deceive and cheat him. This court is not inclined to disturb that finding; on the contrary, we believe the verdict is fully sustained by the evidence. The judgment should be affirmed.

By the Court: It is so ordered.

### ON PETITION FOR REHEARING.

We have carefully read the brief of counsel for plaintiffs in error on his application for rehearing, and will say that it is one of the most ingenious, able, and persuasive briefs and arguments it has ever been our pleasure to read or listen to. It is able because it has every evidence of learning, and deep and thorough study and research. It is ingenious because it presents every issue in the case by

clear, apt, and convincing argument from counsel's stand-
point.  It is persuasive because it is couched in such cour-
teous, ethical, and pleasing language, with every evidence
of highly cultured professional training.  It appeals to the
sympathies and pathetic nature of the person or body to
whom it is addressed, rather than the real exacting prece-
dents and fixed principles of law actually involved in this
case, and all this I say in the most earnest and sincere
sense.  But we are reminded that this is not a question of
courtesy, sympathy, or personal preference on the part of
the writer of the opinion, and no doubt the same can be
said of the trial judge and the jury in the case below.
Counsel takes exceptions to the first part of the opinion
wherein it is said the effect of the verdict is, that defend-
ants had listed for sale a tract of land belonging to O. A.
Johnson, at the minimum price of $8,300, and that they
falsely and fraudulently represented to the defendant in
error that they had no authority to, that they could not,
and the owner would not, sell the land for less than $9,600.
That statement is based on the verdict of the jury under
the instruction of the court.  The instruction was given
by the local judge, and the verdict returned by a jury of
the county, for neither of which this court is responsible.
Since the filing of the motion for rehearing, we have again
carefully gone over the case, and are still of the opinion
that the instructions fairly submitted the law, and that
there is evidence to sustain the verdict.  We are also of
the opinion that this case is distinguished from the first
decision in the Kice Case, 53 S. W. 385, but does come
within the rule laid down in the second opinion in that
case (61 S. W. 266), where the court says:

"Where the purchaser of property from a broker was
induced to pay more than the owner asked for the prop-

erty by the fraudulent representation of the broker that the owner would not accept less than the price paid, the purchaser is entitled, in an action for deceit, to recover of the broker the excess which he pocketed, less the usual commission for making the sale."

Counsel contends that the evidence does not show that the defendants represented to the plaintiff that the owner of the land would not take less than $9,600 for it. We cannot agree with him in that contention. To our mind, even though the exact words were not spoken, the entire record clearly establishes that fact.

Our statutory definition of fraud is applicable here, as found in section 903, Rev. Laws 1910, which is as follows:

"Actual fraud, within the meaning of this chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance with intent to deceive another party thereto, or to induce him to enter into the contract: First. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true.  *  *  *  Third. The suppression of that which is true, by one having knowledge or belief of the fact  *  *  * Fifth. Any other act fitted to deceive."

The motion for rehearing should be denied.

By the Court:  It is so ordered.