**FIRST STATE BANK OF KEOTA v. WADLEY.**

No. 14739—Opinion Filed Oct. 7, 1924.

1. **Landlord and Tenant—Rents—Landlord's Recovery Against Subtenant.**

As between the lessor and sublessees of the original lessee, there is neither privity of estate nor privity of contract: the lessor cannot recover of the sublessee upon the lessee's covenant to pay rent. 67 Okla. 196. 169 Pac. 871.

2. **Same—Rights and Liabilities of Assignee of Lease.**

The assignee of an agricultural lease, where subtenants are in possession. is entit-

led to rents from the subtenants and is liable to the landlord for the rental stipulated in the lease contract.

3. **Same—Constructive Eviction of Lessee.**

Where the lessee owes rent to the landlord, it is not an act of eviction against the lessee for the landlord to notify subtenants to pay him rents due the lessee and he takes no steps to enforce such notice, and, after giving the notice, refuses to receive rents from the subtenants.

4. **Judgment Sustained.**

The record examined, and held sufficient to sustain the judgment.

(Syllabus by Threadgill, C.)

Commissioners' Opinion. Division No. 3.

Error from District Court, Haskell County; E. F. Lester, Judge.

Action by George L. Wadley against the First State Bank of Keota and J. W. Harris for rent for the year 1914. evidenced by two notes. Judgment for plaintiff against the bank, and the defendant bank appeals. Affirmed.

Rainey & Flynn, Currey & Stigler, and Calvin Jones. for plaintiff in error.

E. O. Clark and Malcolm E. Rosser, for defendant in error.

Opinion by THREADGILL, C. The defendant in error, as plaintiff, brought suit in the district court of Haskell county, against plaintiff in error and J. W. Harris, as defendants, to recover on two promissory notes of $350 each, due December 1, 1914, and December 31, 1914, respectively, with 10 per cent. interest from maturity of each note. For convenience the parties will be referred to herein as they appeared in the trial court.

The action was commenced March 11. 1918. The facts of the case were substantially as follows: J. W. Harris, on October 3, 1909, leased certain lands in Haskell county from G. E. Hartshorn, the owner of the lands. The lease was in writing and for a term of five years commencing January 1, 1910, and ending December 31. 1914. The consideration for the lease was $700 a year. to be paid annually in two equal payments, one December 1st and the other December 31st, and these payments were evidenced by two promissory notes for each year with interest at 10 per cent. from maturity.

J. W. Harris took possession of the premises and occupied the same and subrented the farms and paid all the rental notes until

the last year of the contract. After the lease was made Hartshorn sold the land to one Frank Ward, and on April 7, 1914, the plaintiff became owner of the lands, and the last two notes of the said lease, and the landlord under said contract for the year 1914. During the first four years of this lease contract J. W. Harris had borrowed money and become indebted to the First State Bank of Keota, and all of his personal property was mortgaged to the bank, and on February 14, 1914, he made a settlement with the bank in which he turned over to it the personal property under mortgage and assigned to it the lease contract he had on the land. The contract in which this assignment was made was as follows:

"Received, of the First State Bank of Keota, Keota, Oklahoma, one cow and calf that the said bank has a mortgage upon, the same, it is fully understood, is a full settlement by and between them, the First State Bank of Keota and J. W. Harris, and that by such settlement that the said J. W. Harris agrees to turn over to the said Bank one certain lease covering the lands known as the Hartshorn lands now owned by Frank Ward, and by this settlement the said J. W. Harris receipts to the First State Bank of Keota, in full for all dues, demands, claim or claims that he may have in equity or law against the First State Bank of Keota, in full to this date.

"It is also understood and agreed that the said Harris is to have the use of the house that he is now living in which said house is situated upon the said Hartshorn land, for the year 1914, or so long as he may use the said house for his own use and purpose, and by virtue of his living in said house that he, in no wise, lays any claim to the said lease or lands known as the Hartshorn land, its rents or otherwise, but is merely to have the use of the said house, and J. W. Harris, in consideration of the same agrees to give his time and labor to work on this farm, for wages among the tenants as long as his services are demanded, and price of labor paid equal to that on other farms.

"That the said J. W. Harris is to have work of repairing the fence on the lease known as the Hartshorn land, now owned by Frank Ward, said repairing to be only to the extent that it will protect the crops on said lease during the year of 1914, the amount of said work to be determined by the officers of the First State Bank of Keota, and that the work is to be paid for as the said work progresses, and said Harris agrees to furnish an itemized list of work done when paid.

"That the said Harris is to give up all stock used by him named in his chattle mortgage to said First State Bank, and the stock loaned to him by the officers of the said First State Bank which he used to make the crops of 1913, and the said J. W. Harris does hereby receipt in full for all dues; that the said stock is 3 mules and 3 horses and all wagons named in said mortgage. and demands to the First State Bank of Keota to this date named in said mortgage.

"J. W. Harris,
"First State Bank of Keota,
"By H. D. Price, Jr."

Harris continued to live in a house on the premises and work as a hired hand, but had no interest as a tenant in the lease. There were several subtenants who occupied and cultivated the farms under the lease as share croppers. In the fall of the year when corn and cotton were being gathered, upon some report being made to plaintiff, by Harris, that he should look after the same, plaintiff told Harris to tell the tenants not to pay the rent to the bank, but to him, which Harris did, but after this plaintiff refused to have anything to do with collecting the rents from the subtenants, and before this request was sent to the subtenants the bank had refused to collect the rents, but afterwards it appears that some of the rent money was deposited in a separate account in the bank, and some of the officers of the bank received certain parts of the rents. The bank claimed at that time it was not liable to pay the $700 due on the lease contract notes, and had no interest in the rents from the tenants until enough of the third and fourth rents had been collected by plaintiff to satisfy the notes, and if there was anything left after this it belonged to the defendant. About the first of December the defendant bank rented the fields for pasture for $100 cash, and soon thereafter plaintiff tried to rent the same for $100, that is, he tried to get the bank's tenant to pay him $100, claiming that it belonged to him, but the tenant refused to pay it. Plaintiff made demand of the defendant to pay the rental notes and defendant refused to pay them and this action was brought to enforce payment. The issues were tried to a jury which resulted in an instructed verdict for the plaintiff, and judgment was rendered accordingly, and defendant brings the case here for review, asking a reversal on nine assignments of error, which it urges under two propositions in its brief:

(1) That Wadley evicted the plaintiff in error.

(2) The lease was not assigned to plaintiff in error.

1. Defendant contends that the act of

plaintiff, in directing J. W. Harris to notify the subtenants not to pay rent to the bank, but to him, which notice was given by Harris, amounted to an eviction of the bank. Under this proposition, as we understand the argument, counsel do not contend that this notice prevented the bank from collecting the rents, but it was such an act on the part of the plaintiff as prevented him from holding the bank responsible for the rent notes, and bound the plaintiff to collect the share rents from the subtenants in satisfaction of the notes, citing the case of Stevens et al. v. Reilly, 56 Okla. 455, 156 Pac. 157, which was an action growing out of fraud on the part of the defendants in misrepresenting the price of real estate placed with them for sale as real estate agents, but we cannot see where it has any application to the facts of the instant case.

There was no privity of estate nor contract between the landlord and the subtenants by which they were liable to pay the rent promised by the lessee, and the landlord could not enforce his claim against them. Lunsford v. McCann et al., 67 Okla. 196, 169 Pac. 871. There was no fraud in the notice given and nothing to indicate that the defendant was released from liability on the notes, and the record discloses that plaintiff took no steps to enforce the demands of the notice, but refused to receive any of the rents from the subtenants, and we cannot see how the bank could be misled by these acts of the plaintiff. If the subtenants had delivered the rents due from them to the bank, without an agreement in novation, this would not have changed the relation of the parties. The plaintiff in that case would have been liable to the defendant for an accounting for all the rents received, and if they were not sufficient to pay the notes, the defendant would have been liable for any balance unsatisfied, and if the rents had been more than enough to pay the notes, the plaintiff would have been liable to the defendant for the amount in excess.

We cannot see any merit in defendant's argument on this point nor any application of the authorities cited, and since plaintiff did not take any of the rents from the subtenants, but chose to stand upon his rights to hold the lessee responsible for the rent notes, the lessee cannot complain, since it has no agreement to release it from liability, and for the further reason it knew that plaintiff was not collecting rents from the subtenants.

2. Defendant next contends under this proposition that there was in fact no assignment of the lease from Harris to the bank, but simply an agreement "to turn over the lease" to the bank with no agreement for the bank to assume and pay the rent notes. It claims this was the understanding between the bank and Harris, but it does not claim that plaintiff was a party to this understanding. Counsel say further in this argument that the bank understood it was not to have any of the rents from the subtenants until the notes were paid, and anything left over it was to have. Now this argument would be fine if it had any facts in it to support it. In the first place, the assignment contract shows the intention of the parties by the terms used in the contract. The lease was turned over to the bank just like the other property mentioned. J. W. Harris turned over a cow and calf and all stock in his chattel mortgage and the mules, horses, and wagons borrowed from the bank —they were all turned over without any reservation of interest in payment of all indebtedness owing from Harris to the bank, and it was specially provided that Harris should have no further interest in the lease. The intention of the parties to this instrument is plain and there can be no question but what the lease was assigned to the bank for its benefit and control, the same as the other property mentioned. This assignment fixed the relation between plaintiff and defendant, and it is idle to argue what the understanding was between the bank and Harris as binding upon the plaintiff, without an agreement with the plaintiff changing the relations fixed by the assignment. In the next place, defendant is inconsistent in contending that there was no assignment of the lease and at the same time contending that there was an eviction. If there was no assignment of the leasehold interest to the bank there could be no eviction, because there would be no rights vested in defendant that could be taken from it by an eviction.

3. Defendant contends further that the notice sent to the subtenants by the plaintiff amounted to an eviction, citing many authorities in support of its contention, but these authorities are all based upon a substantial interference on the part of the landlord with the rights of the lessee, and by which he is deprived of the possession or enjoyment of the leasehold, and the facts are not similar to the facts of the case at bar, and the cases are not applicable.

Tiffany on Landlord and Tenant. vol. 2. sec. 184, page 1258, defines eviction as follows:

"An eviction may, in general terms, be said to occur when the tenant is forced to

yield possession to one having a title paramount to that of the landlord, or when the landlord himself dispossesses the tenant, either by actual taking possession or by such acts of interference with the latter's enjoyment of the premises that the tenant is in the eye of the law justified in relinquishing possession and he does relinquish it."

Also, section 185 states:

"When we speak of a certain act on the part of the landlord as constituting an eviction, we mean that, if such acts result in the tenant's relinquishment of possession, they together have the legal effect of an eviction."

In same section at page 1260 the author says:

"In order to support inference of an intention to deprive the tenant of possession, the landlord's act or acts must not only involve a substantial interference with the tenant's enjoyments of the premises, but the interference must be more or less permanent, as is generally said 'the act of the landlord must be something of a grave and permanent character.' "

These definitions are supported by our court in the case of New State Brewing Association v. Miller, 43 Okla. 183, 141 Pac. 1175, and practically all the authorities on the subject hold that there can be no eviction without some interference with the possession or enjoyment of the premises, 20 A. L. R. page 1369. The facts in the instant case do not show any interference with the possession or enjoyment of the rights of defendant in the leasehold.

If the plaintiff had brought suit and garnished the tenants, preventing them by law from paying the rents to the defendant, this would not have been an eviction. Siegel v. Baily (Pa.) 97 Atl. 401.

We think the judgment of the trial court was right and should be affirmed.

By the Court: It is so ordered.