**GUM et al. v. FIRST NAT. BANK OF OKMULGEE et al.**

No. 13827—Opinion Filed Jan. 20, 1925.

Rehearing Denied March 16, 1926.

**1. Oil and Gas—Contract to Sell Lease—Separate Provisions Against Misrepresentation Construed.**

A contract for sale of mineral lease contained an exhibit showing the pipe line runs, or total production of oil and gas for a given time, and also the number of barrels produced by each of the four wells at date of contract. One clause provided that material difference between the actual total runs and the exhibit should be a misrepresentation. The second clause provided that if there were any material divergencies between the exhibit and the actual facts. "they also shall be regarded as a material misrepresentation," etc. In an action based on misrepresentation, the first clause did not preclude proof under the second, tending to show that the wells were not each producing the quantity of oil shown by the exhibit.

**2. Same—Fraud—Reliance on Representation.**

In such case, vendor could not defend on the ground that vendees might have discovered, prior to the contract. the actual individual production of the wells.

**3. Disposition of Cause.**

Record examined, and held, the instructions did not fairly submit the issues to the jury.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Okmulgee County; Mark L. Bozarth, Judge.

Action by Lester B. Gum and James H. Topp against First National Bank of Okmulgee and C. T. Smith, trustee. From judgment for defendants, plaintiffs appeal. Reversed and remanded.

Ross & Thurman, for plaintiffs in error.

A. L. Emery, for defendants in error.

Opinion by ESTES, C. Parties appear in the same order as in the trial court. Plaintiffs sued defendants to recover $5,000 deposited with defendant bank in escrow, under a contract between themselves and defendant Smith, as trustee for the owners of an oil and gas leasehold estate in certain 70 acres in Okmulgee county. Defendant Smith was described as first party, and plaintiffs as second parties, in the contract.

the essential parts of which are that the first party bargained and agreed to sell and transfer to second parties the said lease, describing it, to furnish abstract showing good title—

"And further agrees to furnish to parties of the second part the pipe line runs, and also complete statement showing the amount of gas sold, and it is agreed that said statement and runs shall be in accordance with the exhibit hereto attached and marked exhibit 'A'. If said pipe line runs and statements from the gas company are materially different from the runs and statements as shown in exhibit 'A,' then it shall be deemed and considered a material misrepresentation, and parties of the second part shall be entitled to the immediate return of the $5,000 deposited in escrow with this contract. Party of the first part further represents that the itemized statement of material, as shown by exhibit, is true and correct and that the depth of the wells as shown by said exhibit 'A,' is also true and correct; and if there are any material divergencies between the said statement and the actual facts, they also shall be regarded as a material misrepresentation and shall entitle the parties of the second part to an immediate return of said $5,000. * * * Parties of the second part shall have until the 15th day of of July, 1919 in which to elect whether or not they will purchase said lease and all machinery. equipment, and wells located thereon. If parties of the second part do not elect to purchase said property on or before the 15th day of July, 1919, then party of the first part shall be entitled to said sum of $5,000 deposited in escrow in the First National Bank of Okmulgee, Okla., provided said party of the first part complies with the terms and conditions of this contract."

It was further provided that if second parties elected to purchase the property on or before said date, then they should pay on the date of such election $45,000. which, together with the escrow deposit and $50,000, secured in deferred payments, made the total purchase price $100,000. Said option money and the contract were deposited with the defendant bank as escrow agent. Said exhibit, attached to the contract, consisted of a schedule of data of the eight wells arranged in columns under appropriate heads showing among other things, with reference to each well. the depth, date of completion, number of barrels produced in first 24 hours. and also "present daily production in barrels." This exhibit showed that wells Nos. 1, 2, 6 and 7 were dry; that the present daily production in barrels of No. 3 was 11; of No. 4, 12; of No. 5. 12; of No. 8, 38. Said exhibit also contained a plat or diagram of the 70 acres showing the location of the eight wells to have been distributed over the tract. Among other data, the exhibit showed the pipe line runs for the year preceding May 1st. Plaintiffs attempted to rescind said contract and demanded the return of said deposit prior to the expiration of the option, on the ground that they had discovered that said wells in fact produced at date of contract, respectively, only 6½. 6½, 2, and 50 barrels of oil per day. On refusal of defendants to return the escrow deposit, plaintiffs filed this suit to recover same on the ground of misrepresentation, making the usual averments for such purpose, based on the discrepancy between the alleged actual production of the individual wells and their production as shown by said exhibit. Judgment on verdict of jury was for defendants, from which plaintiffs prosecute error. Defendants contend that the purchase was on the pipe line runs and statement from the gas company, under the clause of the contract first quoted above; that such clause limited the matter of misrepresentation to the pipe line runs and statement and excluded other misrepresentations by its very terms; that thereby the production of the individual wells was not made a material misrepresentation. Plaintiffs contend that the clause "and if there are any material divergencies between the said statement and the actual facts, they also shall be regarded as material misrepresentations and shall entitle the parties of the second part to an immediate return of said $5,000," is not limited to the material sold, or the depth of the wells, but has reference to all matters other than pipe line runs and statement of gas. set out in said exhibit; that said last clause includes the production of each well. If defendants' contention be correct, the trial court should have instructed verdict for defendants as matter of law, on such construction of the contract, because there was no contention that the aggregate runs of oil and gas were materially different in fact from that shown by the exhibit. If said contract be so construed as to preclude plaintiffs from alleging and proving any other misrepresentation, then the judgment and verdict are correct, and any error in the instructions would be harmless. We cannot agree with defendants' contention. All parties knew that the pipe line runs and gas statements covered the aggregate production of the lease, and that the wells were not separately gauged. This clause is. therefore, a guarantee only against misrepresentation as to the total production of the lease. There is nothing in this clause to indicate an intention that a misrepresentation in any other respect would be material. Plaintiffs were not thereby

precluded from pleading and proving other material misrepresentations. The evidence of plaintiffs tending to show that the lease on the 70 acres with four wells distributed and producing, as shown by the exhibit, would have been worth much more than in its alleged actual condition—No. 8 producing practically all the oil, No. 5 producing two barrels, and the other two producing slightly more than half as represented in the exhibit. It is patent in the oil business that this might be very material to plaintiffs, if true. Defendant Smith's representation in the exhibit. as to the production of each well, was outside of his guarantee that the pipe line runs and statements of the gas company should not be materially different from the exhibit. We can arrive at the intention of the parties from the four corners of this contract, since the language in this behalf is plain and unambiguous. The first part of the clause, relied upon by plaintiffs, guarantees that the exhibit is correct as to the material sold with the lease and the depth of the wells. Following this is a semicolon, and then the provision that if there are any material divergencies between the exhibit and the actual facts, they also shall be regarded as a material misrepresentation. The reasonable and fair construction thereof, particularly since the word "also" is used, is that the parties intended thereby that said clause should cover any other matters and data contained in said exhibit, because the first clause relied on by defendants covers only the matter of the pipe line runs and statement of gas contained in the exhibit. Said first clause does not attempt to exclude all other matters of misrepresentation. The two clauses, thus construed together, guarantee against misrepresentation as to all matters set forth in the exhibit.

Since plaintiffs did not demur to the evidence, move for instructed verdict, or in any manner challenge the evidence of defendants to support the verdict, their motion for new trial, under the well known rule of this court, did not save for review here the sufficiency of the evidence to support the verdict.

The main question to be tried was whether there was a material divergence from the production of the individual wells as represented in said exhibit. as alleged by plaintiffs. We think the instructions did not fairly submit the issue to the jury. In instruction No. 5, the court advised the jury that plaintiffs alleged that the wells produced as represented in the exhibit, and, in

effect, left it to the jury to find whether defendant Smith did furnish the statement or exhibit. It was not necessary for plaintiffs to prove—nor was it an issue—that defendant Smith represented the production of each well as stated in said exhibit. The answer admitted this and alleged same was true. In the same instruction, and in defining the elements necessary to be proved by plaintiffs to establish fraud, the court advised the jury that plaintiffs must prove by clear and convincing testimony "that defendant was the only source of information." Plaintiffs had a right to rely upon the representations made in the exhibit as to the production of each well. and were not bound to confirm the same before entering into the contract. The instruction, taken as a whole, was prejudicial to the plaintiffs, and resulted in confusing the jury because defendants strenuously contended that it was the duty of plaintiffs to gauge these individual wells. Defendant Smith cannot be permitted to complain or take advantage of the fact that plaintiffs too confidently relied on the truthfulness of the statements in said exhibit. Stevens v. Reily, 56 Okla. 455, 156 Pac. 157. Because plaintiffs had the opportunity to gauge the wells. and determine for themselves whether each was producing the number of barrels shown in the exhibit. did not preclude them from recovering, if the barrels actually produced by each well daily. were materially fewer than set forth in the exhibit, and if the other elements of actionable fraud were present. Werline v. Aldred, 57 Okla. 391, 157 Pac. 305. The crux of the lawsuit was for plaintiffs to prove that three of the wells were not producing, individually, the number of barrels represented in the exhibit. Plaintiffs offered testimony tending to show a lower production of each of the three wells in July. and other testimony tending to show that the production between the date of the contract and July was approximately the same in uniform. The purpose thereof was to show on the date of the contract the production of each well was the same as in July, and less than shown in the exhibit. This offer was refused by the court, and constituted prejudicial error. It is unnecessary to consider the other assignments.

It is therefore recommended that the judgment be reversed, and the cause remanded for new trial.

By the Court: It is so ordered.

Note.—See under (1) 27 Cyc. p. 726; (2) 27 C. J. p. 1147.